The Honorable Steve Jones State Representative P.O. Box 130 Morrilton, AR 72110
Dear Representative Jones:
I am writing in response to your request for my opinion on several questions I will paraphrase as follows:
 1. Is it permissible for a member of the House of Representatives to sponsor a bill that benefits an agency he runs?
 2. Does House Bill 1194, which was enacted as Act 136 of 2003, create a monopoly for the Area Agency on Aging of Western Arkansas (the "AAA")?
You report that the representative at issue is the President and CEO of the AAA, which one your constituents in correspondence to you describes as "a privately owned organization that should be representing the elderly in a fair and unbiased manner."[1]
House Bill 1194, which was enacted as Act 136 of 2003 and codified at A.C.A. § 20-77-102(e) (Supp. 2003), provides:
 To the extent not prohibited by federal law or regulation, the Department of Human Services shall promulgate rules concerning prior authorization for Medicaid ElderChoices, a community based service, that is identical to those in effect for nursing homes on July 16, 2003.[2]
Your constituent, who apparently operates a business offering the provision of ElderChoices services, has made the following complaint about this statute:
 As this [law] is written, my business and many other small businesses will not be able to compete, and in fact many will lose their businesses. This will also negatively impact the elderly as they will lose any choice they currently have, sacrifice customer service, and pay more for their services without competition.
He further suggests that given the legislator's alleged direct interest in amassing monopoly power in the AAA, his sponsorship of a bill that would work toward that end "would seem a conflict of interest."
RESPONSE
With respect to the facts giving rise to your question, the Arkansas Ethics Commission, not this office, is the appropriate entity to investigate whether any ethical breach has occurred. My inquiries reveal that an individual whom I assume is your constituent has indeed filed a complaint with the Ethics Commission regarding this incident. I am likewise unable to answer your second question, which raises intensely factual questions regarding the possible anticompetitive effects of the legislation.
Question 1: Is it permissible for a member of the House ofRepresentatives to sponsor a bill that benefits an agency he runs?
I should note at the outset that I am unable to opine on the purely factual question of whether the enactment of A.C.A. § 20-77-102(e) will have the effects your constituent describes.
As for any ethical ramifications relating to a legislator's sponsorship of a particular bill, the Code contains various proscriptions against using one's office for personal benefit. For instance, A.C.A. §21-8-304(a) provides:
 No public official or state employee shall use or attempt to use his or her official position to secure special privileges or exemption for himself or herself or his or her spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he or she has a substantial financial relationship that is not available to others except as may be otherwise provided by law.
Section 21-8-803 further requires legislators to report all potential conflicts of interest.
Section 7-6-218 charges the Arkansas Ethics Commission with the authority to investigate all allegations of ethical impropriety. See also A.C.A. §21-8-303 (acknowledging that prosecutors also have the authority to enforce the ethics statutes). Section 7-6-217(g)(2) expressly authorizes the Ethics Commission to issue advisory opinions upon request regarding ethical matters. Given this statutory authority, this office has consistently advised persons raising questions of the sort you have posed to direct their inquiries to the Ethics Commission. See, e.g., Ark. Ops. Att'y Gen. Nos. 2000-194; 2000-184; 99-145; 97-390 and 92-209. Rendering the same advice in this instance appears all the more appropriate insofar as determining what advantages, if any, the legislation at issue might bestow on the AAA will entail conducting an intensive factual investigation of the sort I am neither equipped nor authorized to undertake in the formal opinions process. It is my understanding that the Arkansas Ethics Commission, based upon a complaint filed in January 2004, has indeed commenced an investigation of whether the legislator in question violated A.C.A. § 21-8-304 in sponsoring the legislation.
Question 2: Does House Bill 1194, which was enacted as Act 136 of 2003,create a monopoly for the Area Agency on Aging of Western Arkansas (the"AAA")?
I cannot answer this question, which raises issues of fact that I am unable and unauthorized to address. Again, I suggest you direct your question to the Arkansas Ethics Commission.
I regret I could not be of further assistance in this matter.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] In Ark. Op. Att'y Gen. No. 95-273, one of my predecessors offered the following description of area agencies on aging:
 In Arkansas, area agencies on aging (the "agencies") are private, non-profit corporations. See Op. Att'y Gen. 93-374; Op. Att'y Gen. 90-032. I assume for purposes of this opinion that the agencies receive, by way of the state, grant monies from the federal government under 42 U.S.C. §§ 3001 et seq. The state's designation of public agencies or private, non-profit organizations to act as area agencies on aging is, with exceptions not relevant here, a condition of eligibility to receive grants under the federal government's programs for older Americans. 42 U.S.C. § 3025(a)(2)(A). The laws governing those programs clearly contemplate that the states will redistribute grant funds to the agencies to carry out the programs. See, e.g., 42 U.S.C. § 3026. While it is not entirely clear from Arkansas statutory law whether the agencies continue to receive funding from the state (see A.C.A. § 19-5-977 (Repl. 1994)), federal law requires federal grants to be matched from state or local sources. 42 U.S.C. § 3029(b).
* * *
 The agencies appear to exist solely or primarily as part of the state's participation in federal grant programs and its effort to provide certain services to older Arkansans. These programs provide, among many others, nutrition services, transportation services, legal services, social services, and abuse prevention services. See 42 U.S.C. § 3027. Federal law expressly provides that units of local government or other governmental bodies or officials may be designated area agencies on aging. 42 U.S.C. § 3025(c). If, as in Arkansas, private entities are designated as the agencies, they must be under the supervision or direction of the state agency responsible for the programs. Id. Each agency must develop, annually adjust if necessary, and have approved by the state, a local plan for providing services to older Arkansans. 42 U.S.C. § 3026(a). Each agency must conduct public hearings on activities carried out under its plan. 42 U.S.C. § 3026(a)(6)(A). Finally, each must establish a grievance procedure for individuals dissatisfied with or denied services under the plan. 42 U.S.C. § 3026(a)(6)(P).
 In my opinion, because the agencies are under close supervision and direction from the government, must operate in a manner similar to that of a governmental unit, receive most or all of their funding from governments, and perform functions that otherwise would be performed by the government, they are clearly carrying on a public business and are significantly intertwined with government.
But see Ark. Op. Att'y Gen. No. 90-032 (opining that for purposes of determining whether its suppliers were subject to gross receipts tax, the AAA did not qualify as an eleemosynary "governmental agency" whose purchases of foodstuffs for distribution to the aged might be exempt from taxation pursuant to A.C.A. § 26-52-401(19).
[2] According to the Division of Aging and Adult Services of the Arkansas Department of Human Services:
 ElderChoices is Arkansas' Medicaid home and community-based waiver designed for its elderly population. ElderChoices, implemented July 1, 1991, is designed for persons who due to physical, cognitive or medical reasons, require a level of assistance that would have to be provided in a nursing facility, if it were not for the services offered through this program. The program is designed to assist elderly persons reside in their own homes, or live with relatives or caregivers for as long as possible, if that is their choice.